**M. June STUBBE, Plaintiff
and Appellee,**

v.

**Roger B. STUBBE, Defendant
and Appellant.**

**No. 14753.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 13, 1985.

Decided Nov. 20, 1985.

David Alan Palmer, of Strange & Palmer, Sioux Falls, for plaintiff and appellee.

Timothy J. Nimick and Barbara Jo Anderson, of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and appellant.

FOSHEIM, Chief Justice.

In this divorce action, Roger B. Stubbe (husband) appeals from the decision and judgment of the trial court. We affirm.

The parties were married on September 1, 1957. At the time of trial M. June Stubbe (wife) was forty-seven years of age and husband was fifty-four. Three children were born of this marriage. At the time of trial the oldest child, a daughter, was of legal age, Russell was seventeen and Craig was nine. Craig is now the only minor.

Throughout the marriage husband has been employed by Western Electric Company, Inc. Following their marriage, the couple resided in Rapid City. They moved to Sioux Falls, then to Pierre, back to Sioux Falls and again to Rapid City. In 1963, they moved to St. Charles, Missouri, then back to Sioux Falls in October of 1964, where they have since resided.

Wife worked as a registered nurse at local hospitals, either full-time or part-time when the family lived in Sioux Falls and Rapid City. Wife suffered miscarriages in 1960 and in 1961, and complications associated with a pregnancy in 1966 prevented her from being employed until 1968. From

then until 1970, she worked part-time at McKennan Hospital. She did not work outside of the home from 1970 through 1980. Wife completed a refresher course in nursing during the summer of 1980 and commenced her present employment at McKennan Hospital in December of that year.

Wife admittedly was wanting in some home making areas. Nevertheless, both parties attribute the basic cause of their marital difficulties to husband's alcohol abuse.[1]

Both husband and wife have health problems. The trial court concluded, however, that husband's high blood pressure and diabetes did not physically preclude him from full-time employment at Western Electric. In contrast, the trial court concluded that wife's shoulder surgery in 1983 and arthritis has resulted in limited lifting ability. These conditions interfere with her employment as a nurse and, the trial court concluded, she is physically unable to maintain full-time employment as a nurse.

Husband generally works a forty hour week and receives $14.51 per hour. His gross income in 1983 was $31,859.33. Wife receives a typical bi-weekly net income of $505.35 for her part-time employment. Her gross income in 1983 was approximately $13,000.

According to the record, wife relocated herself, family and career on numerous occasions to accommodate husband's continued employment with Western Electric. During the times that wife was employed, her salary contributed to the support of the family and while unemployed, she devoted her energies as a homemaker and mother.

The first issue raised by husband on appeal is whether the trial court abused its discretion in awarding wife one hundred dollars per month alimony for the remainder of her life or until she remarries. Husband contends that this award was an abuse of discretion because wife is capable of working full-time.

We address this issue by revisiting *Guindon v. Guindon,* 256 N.W.2d 894 (S.D.1977):

> The amount and length of alimony payments is ... left to the discretion of the trial court. SDCL 25–4–41. The factors for consideration in exercising that discretion are similar to those used in the property division, i.e., (1) the length of the marriage; (2) the respective earning capacity; (3) the respective financial condition after the property division; (4) their respective age, health and physical condition; (5) their station in life for social standing; and (6) the relative fault of the parties in the termination of the marriage.

*Id.* at 898 (citations omitted). In *Hanks v. Hanks,* 296 N.W.2d 523 (S.D.1980), and *Martin v. Martin,* 358 N.W.2d 793 (S.D. 1984), we adhered to the factors stated in *Guindon* and noted that, although no longer a factor in making a division of property,[2] the relative fault of the parties continues to be a consideration in awarding alimony. *See also Booth v. Booth,* 354 N.W.2d 924 (S.D.1984).

Husband emphasizes our statement in *Guindon* that, "Alimony will not be awarded in such an amount as would allow a wife capable of work to sit in idleness...." *Guindon,* 256 N.W.2d at 898. It is noteworthy, however, that the decision in *Guindon* continued, "... nor will it be denied merely because she may be able to obtain employment and support herself." *Id.* Therefore, we conclude that, upon considering all the evidence, the alimony award was not an abuse of discretion.

The husband next argues that the property division was inequitable because the trial court made no determination of the present value of his pension plan. He also argues that the pension fund should not be included as a marital asset and divided.

---

1. To husband's credit, it should be noted that he apparently mastered his drinking problem after this divorce action was commenced.

2. Relative fault of the plaintiffs has generally been removed by statute as a consideration when awarding property or child custody. SDCL 25–4–45.1.

We note that under the court's division of the marital property, wife was awarded approximately $5,252.00 in value and husband was awarded approximately $19,628.00 in value. The trial court allowed wife use of the family home while the youngest child remains a minor. The house is then to be sold and the sale proceeds are to be disbursed 60 percent to wife and 40 percent to husband. In the interim, wife is responsible for the cost of real property taxes, insurance and repairs under $100.00 per month on the home. Major repair expenses are to be shared by husband and wife. The trial court awarded each party one-half of the A.T. & T. stock, and wife was awarded one-half of husband's pension plan with Western Electric Company, less alimony.

The trial court is entitled to make an equitable division of all marital assets belonging to either spouse. SDCL 25–4–44. A retirement plan has been recognized as a divisible marital asset since it represents consideration in lieu of a higher present salary. *Hansen v. Hansen*, 273 N.W.2d 749 (S.D.1979). Here, husband's pension contributions would have been otherwise available to the family as disposable income during the marriage. *Boyd v. Boyd*, 116 Mich.App. 774, 323 N.W.2d 553 (1982). Further, this pension plan is vested in the sense that it cannot be unilaterally terminated by his employer, though actual receipt of the benefits is contingent upon his survival and no benefits will accrue to the estate prior to retirement. Expert testimony in the record revealed that had the husband retired at the time of trial, he would have received monthly pension payments of about $785.00 during a life expectancy of 23 years and 10 months.

We cannot conclude that the trial court erred in considering the pension plan or in the total division of the marital assets. Wife made substantial contributions to the marriage in relocating herself and the children on numerous occasions to enhance husband's employment. She forfeited her own pension possibilities due to intermittent employment as a nurse made necessary by the demands of motherhood. It is true that the 50–50 split of the pension plan does not recognize husband's post-divorce contributions to the plan. This involves the uncertainty as to when husband will retire. When he does retire, husband can then petition the court for adjustment of any inequities. A reduction of wife's share of the pension plan benefits or alimony payments may then be indicated. In this regard, we take note that this manner of pension plan division comports in some respects with the Social Security provision which entitles certain divorced spouses to collect one-half of the former spouse's primary insurance benefits. *See*, 42 U.S.C. §§ 402, 405, 416, 1302 (1973 and Supp. June, 1985); 20 C.F.R. § 404.331 et seq.

We award wife attorney fees in the amount of $1,000.00 based on her affidavit itemizing appeal expenses.

The judgment is affirmed.

MORGAN, J., and WUEST and HERTZ, Acting Justices, concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

To understand the academic depth of my research in these alimony and property division cases, so as to appreciate my further dissent in this case, I refer the reader to *Temple v. Temple*, 365 N.W.2d 561, 569 (S.D.1985); *Connelly v. Connelly*, 362 N.W.2d 91, 92 (S.D.1985); and *Martin v. Martin*, 358 N.W.2d 793, 800 (S.D.1984). This author has sharply departed from the views of his Brothers on this Court on the subject of alimony. As I have expressed before, there has been repeated pronouncement and demands for the equality and independence of the sexes; yet, the demand for alimony seems to have sharpened in South Dakota and this state has veered into a column of the liberalization of alimony. Another strange paradox of this all, is the fact that this state is historically a very poor economic state with the smallest paychecks in the Nation. *See State v. Auen*, 342 N.W.2d 236, 240 (S.D.1984) (Henderson, Justice, dissenting).

The full facts, as depicted in the settled record herein, do not support an award of alimony and the trial court abused its discretion in awarding the same. Appellant ought not to have to pay alimony. *Grant v. Grant*, 5 S.D. 17, 57 N.W. 1130 (1894). Under the state law of South Dakota, appellant is no longer head of the house, said statute having been repealed. *See Martin*, 358 N.W.2d at 803 n. 3. This was one of the principal targets of the women's liberation movement. Before discoursing on why this particular ex-wife is not entitled to alimony, I wish to point out that I am not opposed to rehabilitative alimony where there is a need to rehabilitate a deserving spouse. *Booth v. Booth*, 354 N.W.2d 924 (S.D.1984) (alimony restricted to 15 months); *Goehry v. Goehry*, 354 N.W.2d 192 (S.D.1984) (wife unable to work and in poor health). "To me, rehabilitative alimony is an award of a monthly sum of money to rehabilitate a deserving spouse so that he or she may obtain the skills necessary to fend for himself or herself in life, by education or job training." *Saint-Pierre v. Saint-Pierre*, 357 N.W.2d 250, 263 (S.D. 1984) (Henderson, Justice, specially concurring). Appellant ought not to pay because appellee did not keep up the home and showed disdain for homemaking; she refused to take any interest in family social outings, namely, with her husband and her son; she has had a rather aloof attitude toward the minor son, expecting the father, in most matters, to raise the boy (yet, she wants his custody and $300 per month child support which has been awarded to her); her principal pursuit is to read, watch soap operas on television, and smoke cigarettes which she apparently greatly enjoys; she particularly enjoys reading romance novels; she has refused/neglected to regularly cook meals for her husband and child; she admitted under oath to engaging in conduct which she knew would provoke her husband, merely for the purpose of provoking him; she has absolutely refused to work full time * although there is nothing in this

record to suggest that medically she cannot work full time; she diagnoses herself as having arthritis; she expects her husband to work a full 80 hours, per two-week period, although he experiences hypertension, high blood pressure, gout, heart trouble, back and shoulder problems, and is a diabetic. Were she to work as a full-time nurse, which she can if she simply desires to do so, she would be entitled to retirement and insurance benefits. It strikes me that she does not deserve an award of alimony and inasmuch as she is fully capable of supporting herself with a comparable earning capacity to that of her ex-husband, she ought not to be awarded alimony. Is it not true that an award of alimony must have, at its roots, the conscious regard for equity and the circumstances of the parties? *See* SDCL 25-4-41; SDCL 25-4-44. Alimony is not a monthly stipend to be awarded to simply punish the male specie and to give the female specie a coupon to clip each month that she might watch soap operas, smoke cigarettes, and read romance novels in a fantasied never-never land. Nor should it be founded on foibles. Furthermore, the property division has left the parties in an equal financial position. Another equity created by the trial court which should preclude the wife from an award of alimony is the fact that the trial court awarded her nine years of rent-free living in the family home. Appellant is seven years older than appellee. There are six factors to be considered in awarding alimony under *Guindon v. Guindon*, cited in the majority, and if one applies the facts of this case to those six factors, it becomes obvious that an alimony award is an abuse of discretion herein. The discretion exercised in awarding alimony must be soundly and substantially based upon the evidence. *Owen v. Owen*, 351 N.W.2d 139 (S.D.1984). Said precedent is violated here. This Court has the power to revise or eliminate the alimony award. SDCL 25-4-46. Abuse of discretion refers to an end or purpose not

---

* This is substantiated by her testimony on page 67 of the transcript; a finding of fact, however, was entered expressing that she was *unable* to maintain or undertake any additional employment hours or duties.

justified by, and clearly against, reason and evidence. *Herndon v. Herndon,* 305 N.W.2d 917, 918 (S.D.1981).

I would also reverse the property settlement division. There are errors below concerning the property division. The trial court failed to include antiques supposedly owned by the appellee exclusively. For authority that this constitutes error to fail to include all property and place a valuation therein, *see Prentice v. Prentice,* 322 N.W.2d 880 (S.D.1982), and *Guindon v. Guindon,* 256 N.W.2d 894 (S.D.1977). Also, the trial court apparently included certain motor vehicles as being owned by appellant when, in truth and in fact, they had been deeded over to the appellee prior to the entry of the divorce decree.

The trial court committed reversible error in granting unto appellee a one-half interest in a nonvested pension plan as part of the property division. How can there be an award of property unless there is a valuation of the property? Obviously, there cannot be, for the Court has nothing to affix its judgment upon. In Finding of Fact 51, the trial court specifically found that the present value of appellant's pension with the Bell System Pension Plan could not be determined. Notwithstanding, the trial court awarded appellee one-half of this undetermined amount via Finding of Fact 49. In *Hansen v. Hansen,* 273 N.W.2d 749 (S.D.1979), this Court remanded the property division to the trial court for *a determination of the present value* of the right to receive the retirement account upon retirement. In *Hansen,* we determined that the present value had to be included in the property evaluation; here, it has already been determined that there is no way that the present value of the pension plan can be determined. Although the majority opinion attempts to write around it, this pension plan is not marital property. It can be rubbed and scrubbed to try to make it marital property, but it is not marital property. It cannot be marital property to divide where there is no present cash value. Moreover, and most importantly, if the appellant dies, and all parties concede this, his estate has absolutely no property right in this pension plan. No survivor, including this ex-wife, would obtain any property right. Appellant's receipts of any pension benefit under the plan is contingent upon survival since the benefits will not accrue to his estate should he die prior to retirement. There is ample testimony that appellant has no present plans to retire. How, then, the trial court can award one-half of nothing is more than I can understand. As I understand the decision of the trial court, which is touched upon ever so lightly by the majority opinion, the alimony payments may be deducted from the pension benefits in the future (should there by any). The pension award unto the ex-wife is part of the property division. How it can be diminished, in the future, is more than I can understand. A property division is final and is not subject to modification at a later date and this Court has repeatedly so held. *See Johansen v. Johansen,* 365 N.W.2d 859 (S.D.1985); and *Blare v. Blare,* 302 N.W.2d 787 (S.D.1981). In the same connection, when we address the pension plan, it is noted that the trial court awarded the ex-wife one-half of all of the AT & T stock for which she had not imparted one iota of effort or American coin. His lifetime of labor with his company cannot be enjoyed because of the judgment below which has cast a cloud of gigantic proportion upon a pension plan which has no discernible value at the time of the decree of divorce. Apparently, far off in the future, should he live, and should he work, and should she live, and should she not remarry, and should he obtain a monthly pension benefit, she would obtain one-half of that pension benefit (property division) minus alimony payments. Considering the fact that she is fully capable of working and that she has acted as head nurse at the McKennan Hospital, one of the most well-established and well-respected hospitals in this state's largest city, and has refused to work full time, I not only believe the alimony award to be an abuse of discretion but would determine that this is likewise true of the pension award plus the fact that it is a finding of fact which is

clearly erroneous and I have a firm conviction that a mistake has been made below. *In re Estate of Hobelsberger,* 85 S.D. 282, 181 N.W.2d 455 (1970).

Since I would reverse the trial court's alimony award and property division, which includes one-half of the pension plan, I also dissent from that portion of the majority opinion which awards wife attorney fees in the amount of $1,000. Having lost on appeal, under my view of the case, ex-wife's plea for attorney fees falls perforce. She advances the deep-pocket theory for her position that appellant should pay these attorney fees; she maintains that he has more, so he should pay. Is this what equity is all about? I would ask: Ought he be required to pay the attorney fees of $1,000? Before I address either her need (which is not apparent) or his ability to pay (which is highly questionable, in view of a liberal child support of $300 plus the $100 alimony and the insurance he must maintain as well as the medical and dental expense for the parties' minor child), I would ask: Ought he to defray her attorney fees? In *Connelly,* 362 N.W.2d at 98, I closed with: "Work. It is one of God's greatest gifts to man. How foreign it is to some and a constant companion of others. In law, we should encourage and laud it." This lady is capable of working full time as a nurse in a hospital at an excellent salary and should work for her economic and emotional salvation. Her ex-husband ought not be filled with anxiety, stress, or have to die to pay alimony and the various commitments that he is now required to fulfill under the decree below.