KOSTEL FUNERAL HOME, INC.,
d/b/a Kostel Funeral Home,
Plaintiff and Appellee,

v.

DUKE TUFTY COMPANY, and Luther
J. Munkvold, Defendants,

and

Joseph L. Swenson, Defendant
and Appellant.

No. 15040.

Supreme Court of South Dakota.

Argued April 22, 1986.
Decided Sept. 10, 1986.

William J. Klimisch of Goetz, Hirsch & Klimisch, Yankton, for plaintiff and appellee.

Gary P. Thimsen of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendants Duke Tufty Co.

Steven L. Jorgensen, Sioux Falls, for defendant and appellant.

MORGAN, Justice.

Joseph L. Swenson (Swenson), a used-car wholesaler, was found liable by a jury for violation of 15 U.S.C. § 1989, *et seq.* Swenson appeals the award of civil damages and claims prejudicial error by the trial court. We affirm.

The dispute in this case centers around the sale and purchase of a used 1980 Jeep Wagoneer. The Wagoneer was originally purchased by defendant Luther J. Munkvold (Munkvold) from Tholen Auto Sales of Marshall, Minnesota. The odometer at the time of the purchase from Tholen Auto Sales read 7,798 miles, which indicated the odometer had "turned over." The Wagoneer was in good condition and appeared to have much less mileage. Munkvold was an employee of Swenson

and purchased the vehicle on Swenson's behalf. Shortly after the purchase, Munkvold and Swenson set out for Sioux Falls, South Dakota, in anticipation of selling the Wagoneer to Duke Tufty Company (Duke Tufty). Swenson drove the Wagoneer and Munkvold followed in a different vehicle.

Swenson claims that on the way to Sioux Falls the odometer in the Jeep began acting erratically. At that time, he disconnected the odometer cable from the transmission. Swenson informed Munkvold of the problem and told Munkvold to continue to Sioux Falls. Swenson drove the Jeep to a friend's garage in Inwood, Iowa, where he proceeded to dismantle the odometer. Upon inspection, Swenson claims he noticed a retaining clip had apparently fallen from the odometer mechanism. Swenson, a trained and experienced mechanic by his own admission, proceeded to attempt to repair the odometer. He claims that he attempted to reset the odometer to the correct mileage but after some time became frustrated and reassembled the odometer with approximately 62,000 miles registering.

Although the precise dates are somewhat in dispute, Swenson sold the vehicle to Duke Tufty shortly after completing the repair on the odometer. The obligatory odometer mileage statement indicated that the odometer reading should not be relied on. There is some question as to the authenticity of this statement, due to the fact that the November 17 purchase date listed on the statement could not have been accurate. Laddie Kostel, Jr., (Kostel), the president of Kostel Funeral Home, Inc., noticed the Wagoneer in the used car lot at Duke Tufty and became interested in purchasing the Wagoneer.

The sales manager at Duke Tufty had placed a piece of tape over the odometer readout and had written on the tape the words "unknown mileage." Kostel inquired as to the meaning of the tape over the odometer. He claims that Duke Tufty personnel told him that it was merely company policy to place such a notice on all vehicles purchased at an auction sale. Kostel also testified that he inquired as to the name of the previous owner but was told by Duke Tufty personnel that it would be impossible to find the name since the car was purchased at auction. Furthermore, Kostel claims that Duke Tufty sales people represented to him that the mileage was "probably correct" given the condition of the vehicle.

The odometer mileage statement incorporated in the Kostel/Duke Tufty purchase agreement is also surrounded by controversy. The statement has two sections. Each section contains three statements, only one of which is to be marked with a check. Duke Tufty personnel, when filling out the first section, checked statement # 2 which reads: "I hereby certify that to the best of my knowledge the odometer reading as stated above reflects the amount of mileage in excess of designed mechanical odometer limit of 99,999 miles/kilometers of the vehicle described above." This check mark appears to be scratched out and in its place statement # 3, which follows, was checked. "I hereby certify that to the best of my knowledge the odometer reading as stated above is NOT the actual mileage of vehicle described above and should not be relied upon."

In the second section, Duke Tufty personnel checked statement # 2 which states: "I hereby certify that the odometer was altered for repair or replacement purposes while in my possession, and that the mileage registered on the repaired or replacement odometer was identical to that before such service." Later testimony indicated that Duke Tufty did not alter or repair the odometer on the Jeep while it was in their possession. In any event, Kostel claims he relied on the representation of Duke Tufty salesmen that the mileage was "probably correct." Kostel signed the purchase agreement without reading the odometer mileage statement because he was in a hurry.

Shortly after purchasing the vehicle, Kostel incurred substantial repair bills and subsequently discovered the odometer tam-

pering. He brought suit against Duke Tufty, Munkvold, and Swenson under several causes of action, including one for the violation of 15 U.S.C. § 1989, *et seq.* The jury found no liability on the part of Duke Tufty or Munkvold, but awarded $3,765.36 in actual damages against Swenson. The court assessed an additional $3,715.50 in attorney fees and costs under the statute. The actual damages were tripled as provided by statute and judgment was therefore entered in the amount of $15,011.58.

■ Swenson, in his initial argument, claims the jury's verdict that Swenson intended to defraud Kostel is not supported by the evidence. While much of the evidence is disputed, it is uncontradicted that the Wagoneer, when purchased from Tholen Auto Sales, had approximately 7800 miles on the odometer. The Minnesota mileage statement indicates that the approximately 7800 miles were in excess of 99,999 miles. It is also uncontradicted that sometime between the purchase of the vehicle in Minnesota and the subsequent sale to Duke Tufty the odometer reading changed from approximately 7800 miles to approximately 62,000 miles. Furthermore, it is not disputed that the sale agreement between Munkvold, who was Swenson's agent, and Duke Tufty indicated that the mileage was unknown. In short, a vehicle with mileage of approximately 107,800 miles and an odometer mileage statement indicating mileage in excess of 99,999 miles became a vehicle with an odometer reading of approximately 62,000 miles and "unknown" mileage according to the South Dakota odometer mileage statement.

Kostel introduced expert testimony at trial that tended to cast doubt on the veracity of Swenson's testimony. Specifically, testimony was introduced that discredited Swenson's story concerning the erratic behavior of the odometer, his inability to reset the odometer, and his claimed cause for the odometer malfunction. The jury received the standard *falsus in uno, falsus in omnibus* instruction and therefore could have disregarded Swenson's testimony *in toto.*

Swenson is mistaken when he states in his brief that "there is absolutely no evidence that [Swenson] had any intent or motive for misrepresenting the mileage." The motive for misrepresenting the mileage was simple. Expert testimony introduced by Kostel indicated that a Wagoneer with approximately 62,000 miles would be worth up to $2,000 more than a Wagoneer with mileage in excess of 100,000 miles. Furthermore, Swenson is erroneous when he claims "the evidence clearly shows that full disclosures of this vehicle's mileage were made in every instance." There is a substantial difference between a mileage statement that indicates mileage in excess of 100,000 miles and a mileage statement that indicates unknown mileage, especially when the odometer on the vehicle in question reads 62,000 miles.

"In resolving sufficiency of evidence issues on appeal, this court should examine the record to determine only if there is competent and substantial evidence to support the verdict. We resolve all conflicts and draw all reasonable inferences therefrom in favor of the prevailing party." *Zee v. Assam,* 336 N.W.2d 162, 164–65 (S.D. 1983) (citations omitted). In light of the foregoing discussion, we hold there is competent and substantial evidence to support the jury verdict in this case.

■ In his second issue on appeal, Swenson claims the trial court erred in failing to answer the jury's question during deliberations. During the course of jury deliberations, the foreman submitted a question to the court as follows: "Do we have to prove the 4 steps of fraud to find that he defrauded in the second cause—odometer change?" The trial court heard arguments from counsel representing the three parties and answered the question as follows: "You must decide this case on the instructions given you by the Court." Swenson claims that the trial court should have answered the jury's question in the affirmative and required the jury to find the four elements of common law fraud prior to rendering a verdict based on 15 U.S.C. § 1989.

There is authority that indicates the elements of common law fraud and the elements of 15 U.S.C. § 1989 are not synonymous. *See Vogt v. Nelson*, 69 Wis.2d 125, 230 N.W.2d 123 (1975). Furthermore, there is no language in the statute that supports Swenson's interpretation. Swenson does not cite a single authority to support his position on this issue. We have often stated that arguments that cite no authority, which is a violation of SDCL 15–26A–60(6), may be deemed waived.

■ Swenson's third issue is again unsupported by any citation to authority. In any event, the argument presented is of little consequence and may be disposed of easily.

The verdict form submitted to the jury read as follows:

We, the jury, duly impaneled in the above entitled action, find for the plaintiff and against the defendant Joseph L. Swenson as follows:
First cause of action (fraud)
$___ actual damages.
$___ punitive damages.
Second cause of action (violation of odometer statute)
$3765.36 representing:
✓ Actual damages
___ To be tripled
You should not award actual damages on more than one cause of action.

Swenson claims "that the jury was given an opportunity to triple the damages if they so wished and they did not, and therefore the Court erred in entering Judgment for more than the jury's verdict." Swenson simply misreads 15 U.S.C. § 1989.* The requirements of the statute are not permissive, they are mandatory. The statute, in essence, states that the successful plaintiff *shall* recover triple damages or $1500, whichever is greater, and *shall* recover attorney's fees. At least one court has noted the mandatory nature of the

---

* 15 U.S.C. § 1989 in pertinent part reads:
    (a) Any person who, with intent to defraud, violates any requirement imposed under this subchapter shall be liable in an amount equal to the sum of—

statute. *See Duval v. Midwest Auto City, Inc.*, 578 F.2d 721 (8th Cir.1978).

We affirm the judgment of the trial court.

WUEST, C.J., HENDERSON and SABERS, JJ., and McKEEVER, Circuit Judge, concur.

McKEEVER, Circuit Judge, sitting for FOSHEIM, J., disqualified.

(1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and
    (2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.