Kenneth P. SCHMITZ, Plaintiff
and Appellant,

v.

Catherine C. SCHMITZ, Defendant
and Appellee.

No. 13980.

Supreme Court of South Dakota.

Considered on Briefs Sept. 15, 1983.

Decided July 3, 1984.

Craig A. Kennedy of Doyle, Bierle, Porter & Kennedy, Yankton, for plaintiff and appellant.

Phillip O. Peterson of Frieberg, Peterson & Travis, Beresford, for defendant and appellee; Martin G. Farrell, Legal Intern, Frieberg, Peterson & Travis, Beresford, on brief.

PER CURIAM.

In this divorce action the husband (appellant) appeals from a judgment awarding custody of the parties' child to the wife (appellee). We affirm.

Appellee was thirty-five years old at the time of trial, has a B.S. degree in nursing and has worked as a critical care nurse. She was divorced from her first husband in 1972 and was awarded custody of their two children, George, who was in his pre-teens, and Kim, who was a teenager at the time of trial.

Appellee later met Fred Good who had a hotel on a Carribean island off the coast of Belize, Central America. With the possibility of a job there, she and her children moved to Good's Carribean hotel. The prospective job opportunity there did not materialize, however. She found the island isolated and Belize to be "very different culturally, very different intellectually; that there was just many, many major changes in lifestyle that were difficult to adjust to." After arranging for the care of her children, she entered Yankton's Sacred Heart Hospital for psychiatric care. Appellant initially was her therapist at the hospital.

Appellant was forty-nine years old at the time of trial and had been an ordained Catholic priest. After he left the priesthood, he received a doctorate degree in counseling psychology and educational psychology. As appellee's hospitalization in Yankton neared an end the parties discovered that an emotional relationship had grown. A few months after appellee's release in March 1979, the parties married.

When they married, the parties agreed that appellee would continue her education to become a physician. Appellant agreed to be the "breadwinner" and to undertake domestic tasks so appellee could study and have time for her children. When they decided to have a child the pregnancy was planned so that the child would be born during summer vacation, before appellee began school.

During the pregnancy and after Erik was born in July 1980, some conflicts in the marriage arose. Appellant informed appellee that Erik could "bond" to only one parent. Appellant prevented appellee from holding, bathing, or breastfeeding the child. Appellant's tactics of frustrating appellee's efforts at parenting included physically pushing appellee away from the child, choking her, and leaving the home with the child and returning when the child was asleep. Appellant also often refused to communicate or have any contact with appellee for up to six weeks at a time while they lived together in the same house.

A considerable amount of testimony was devoted to appellee's behavior and mental condition. According to appellant, after Erik was born and appellee had returned to school, she occasionally made suicidal statements, was autistic, screamed until she passed out, or angrily slammed doors. Appellant contends that appellee occasionally appeared nude in front of the children.

Dr. Daryl Stephenson was the psychiatrist who treated appellee when she was first admitted to the Yankton hospital. Besides being a social acquaintance of appellant's, Dr. Stephenson worked with appellant in diagnosing appellee at the time she was admitted to the hospital. Although Dr. Stephenson's opinion was that appellant was fit to have custody of the child, he also testified that appellee was not unfit. Another expert, who was a clinical psychologist, testified to appellee's personality traits and had the opinion that appellant would be the better choice for custody of the child.

Appellee's expert was a retired psychiatrist who had practiced medicine for thirty-nine years. He acknowledged the weaknesses in appellee's personality but testified that appellee did "not show any evidence of illness at this particular period of time that would contradict her taking care of her own children."

Prior to trial appellant made a motion for a "home study" to be done either by an expert retained by appellant or an expert appointed by the court. The court granted the motion and requested a court services officer to do the report. The twenty-two page report included summaries of interviews with the parties and individuals who were acquainted with them socially and/or professionally. Another single page of the report gave the officer's summary and a recommendation that custody of the child be given to appellee. A fair reading of appellant's deposition indicates that this report was available to appellant at that time, approximately a month before the trial. Appellant was also aware of the officer's recommendation that appellee be given custody of the child. The officer testified at trial and was cross-examined by appellant. Appellant's objections to the report and recommendation were overruled and the documents were admitted into evidence.

■ Appellant's first contention is that the trial court erroneously received the report of the court services officer into evidence because the report consisted entirely of hearsay statements and because appellant was denied any opportunity to cross-examine the people who were interviewed by the officer. While investigative reports are not expressly authorized in divorce actions we have recognized that these reports may be used to aid the court in making its custody determination if the parties consent or enter into a stipulation and do not object to their use. *See Karim v. Karim*, 290 N.W.2d 479 (S.D.1980); *Christensen v. Christensen*, 85 S.D. 653, 190 N.W.2d 62 (1971). By making a motion for a report appellant as much as consented to the report and will not be heard to complain now. *Onderdonk v. Onderdonk*, 3 Wis.2d 279, 88 N.W.2d 323 (1958).

■ This report, which was available to appellant a month before trial, identified every individual who was interviewed and summarized their statements. Some of these individuals testified at trial and were cross-examined by appellant. Appellant knew the identity of the others a month before trial. He had every opportunity to secure their presence at trial and afford himself an opportunity to cross-examine them. *See In re Scarlett*, 231 N.W.2d 8 (Iowa 1975). *Oltmanns v. Oltmanns*, 265 Minn. 377, 121 N.W.2d 779 (1963).

■ Though the statements of the people interviewed are admittedly hearsay, the court services officer's report is fairly well limited to each individual's own observations, or opinions based on their own observations about the child and his parents. Given the limited resources of the trial court and the parties, we cannot imagine a more trustworthy approach, short of having the individuals testify at trial, than to have the trial court's own agent, the court services officer, gather these facts himself. *See* SDCL 19–16–28 (hearsay rule "catchall" exception). The interests of justice were best served in this case by admitting the report and shedding as much light as possible on the difficult question of custody.

■ Appellant also contends that the trial court abused its discretion in awarding custody of the child to appellee. Though the faults of each parent were revealed to the trial court, the court did not find that appellee's conduct would affect the child. *Watt v. Watt*, 312 N.W.2d 707 (S.D.1981). Instead, the trial court found that appellant had been over-possessive, allowed his technical training to interfere with his common sense, and got carried away to such extent that the child was being experimented upon. The trial court placed great weight upon the fact that appellee had done "a good job rearing the child since she's had it in temporary custody;" and "that apparently even with the conditions that she had before, that she did all right with the other two children." Further, the trial court expressed on the record, "I don't hear any testimony to the effect that they're affected by the type of life that she's led. She has had experience in rearing children and like I say, apparently done pretty well." Because these findings support the trial court's conclusion that it was in the child's best interest to award custody to appellee,

and the deliberation of the trial court, who heard and saw the witnesses, deserves deference, we hold that the court did not abuse its discretion. *Prentice v. Prentice*, 322 N.W.2d 880 (S.D.1982).

The judgment is affirmed.