**Patti Rae RYKEN, Plaintiff and Appellee,**

v.

**Larry L. RYKEN, Defendant and Appellant.**

**Nos. 16213, 16224.**

Supreme Court of South Dakota.

Argued Jan. 9, 1989.

Decided April 26, 1989.

---

See also 440 N.W.2d 307.

Arthur L. Rusch of Bogue, Weeks, Rusch & Billings, Vermillion, for plaintiff and appellee.

John E. Burke, Sioux Falls, for defendant and appellant.

HENDERSON, Justice.

## PROCEDURAL BACKGROUND

Appellee Patti Rae Ryken (Patti Rae) commenced this divorce action in December 1985 after three and one-half years of marriage to appellant Larry L. Ryken (Larry). Larry also sought divorce, by counterclaim. The circuit court for Yankton County granted divorce to both parties on the grounds of irreconcilable differences, and also granted Patti Rae divorce for extreme cruelty. The trial court divided the parties' property, and awarded Patti Rae both $25,000 in permanent alimony and $625 per month for forty-eight months as rehabilitative alimony. She also was awarded $6,500 in attorney's fees and $4,000 in appraiser's fees.[1] Larry appeals (Appeal No. 16213), alleging that the trial court erred regarding division of property and its awards of rehabilitative alimony, attorney's fees, and appraiser's fees. In turn, Patti Rae argues, through notice of review (Appeal No. 16224), that the trial court's awards of attorney's, accountant's and appraiser's fees were too low.

We reverse the trial court's awards of property, alimony, and fees, holding: 1) that rehabilitative alimony was unjustified on this record; 2) that the trial court's property division was an abuse of discretion; and, 3) that Patti Rae's awards of attorney's, appraiser's, and accountant's fees were inadequate.

## FACTS

Patti Rae and Larry met in the Fall of 1981. She had been married twice before. Her first marriage, of twelve years' duration, ended in 1981 and produced three children. Her second marriage, also in 1981, lasted a month. Larry, widowed in October 1981, also had three children, whose acquaintance with Patti Rae's children brought the parties together. They married on June 15, 1982, after Patti Rae signed an antenuptial agreement by which both parties gave up any claim on the personal or real property of the other. This agreement made no provision for Patti Rae's support in any form. It also stated that both owned real property, a patent untruth.

At the time of the marriage, Patti Rae owned only an inexpensive car, her clothing, and personal effects. Her education consisted of one year of college, and her work history was limited to part-time sales positions. Her first husband paid her $300 per month in child support. Larry, on the other hand, was a college graduate and owned, among other things, the Yankton Livestock Company and three-quarters of a partnership in the R & R Cattle Company. The trial transcript contains testimony by Larry which indicated that his net worth, at the start of the marriage, was roughly 2.5 million dollars although, at another point in the transcript, he estimated his net worth to be one million dollars at that time.

Immediately before and during the marriage, the parties spent money lavishly. He bought a diamond necklace, appraised at $24,000, and gave it to her to wear. The couple went out for dinner three nights a week, and traveled extensively. Larry's financial records were unreliable, as evidenced by his claim that a check for $24,090 drawn on a Yankton Livestock account, recorded as an expenditure on "feed for calves" in company records, was actually used to pay an old friend for fifty gold Krugerrand coins. Larry left the running of his household to Patti Rae, who paid the expenses with Larry's money. Her own income was limited to her monthly child support payments, which she used to pay off a $9,000 debt to her father. She did, however, occasionally work without pay for Yankton Livestock, entertain for business

---

1. In addition, the trial court had earlier ordered Larry to pay a $2,500 retainer fee for Patti Rae's appraiser.

purposes, and accompany Larry on business trips.

Deterioration set into the marriage. Larry physically and verbally abused Patti Rae, apparently motivated by jealousy. In December 1985, she left him. Curiously, Larry's children initially went with her. After she departed, Larry hired a housekeeper, to whom he paid $175 a week. Prior to her departure, Patti Rae assembled approximately $4,000 to $4,500 in cash at their house. She also took various items of furniture, and a 1985 Cadillac registered to Yankton Livestock, which she used regularly. Larry later alleged that she or her friends made off with his fifty Krugerrands, but this she denied. This divorce proceeding followed.

## DECISION

### I. REHABILITATIVE ALIMONY

The trial court directed Larry to pay $625 in rehabilitative alimony for 48 months, plus 7% interest on unpaid installments. He argues that the award constitutes an abuse of discretion. We agree.

■ The factors to be considered in awarding alimony are: 1) The length of the marriage; 2) the respective earning capacity of the parties; 3) their respective financial condition after the property division; 4) their respective age, health, and physical condition; 5) their station in life or social standing; and 6) the relative fault in the termination of the marriage. *Caughron v. Caughron*, 418 N.W.2d 791, 793 (S.D.1988); *Tesch v. Tesch*, 399 N.W.2d 880, 884 (S.D. 1987). The marriage here was short in duration (separation in three and one-half years). The parties are both relatively young (Larry was 44 at trial, Patti Rae was 37), and in reasonably good health. Both, during their marriage, lived well and Patti Rae is no worse off regarding employment than she was before. Indeed, the record indicates that she has a part-time sales job at a health food store, as she did at the time of her marriage. She has gone into business for herself, although this business was just breaking even at the time of trial.

■ There is little indication on this record that rehabilitative alimony is justified. Rehabilitative alimony must be designed to enable a spouse "to obtain the educational skills she needs to fend for herself in life." *Tesch*, 399 N.W.2d at 885. There is no testimony that Patti Rae was seeking any rehabilitation. There was no discussion of educational plans. No findings of fact or conclusions of law support rehabilitation. Her vocational inadequacy can be attributed to her twelve-year first marriage, a liability that cannot be laid at Larry's door. As in *Wilson v. Wilson*, 434 N.W.2d 742 (S.D.1989), the trial court gave little or no consideration "to the factor of relinquishment of professional or vocational skills." *Wilson*, at 745. Even Patti Rae's pleadings and briefs are couched in terms of support, not rehabilitation. At trial, Patti Rae's exhibits showed her monthly income, excluding support from Larry, to be $750, $300 of which was child support from her earlier husband. Her monthly expenses, however, are $1,670.

■ The vast disparity in these parties' earning abilities, property holdings, needs, and Patti Rae's financial circumstances might well reflect a support award (which was prayed for), but an award of rehabilitative alimony is not, on this record, supportable. In *Shafer v. Shafer*, 283 S.C. 205, 320 S.E.2d 730 (1984), a rehabilitative alimony award was reversed because there was no factual finding regarding any rehabilitative goal to be served, and the duration bore no reasonable relationship to the wife's educational timetable. Here, no such goal or timetable exists. This award is clearly against reason and evidence, and thus is an abuse of discretion. *Straub v. Straub*, 381 N.W.2d 260, 261 (S.D.1986); *Herndon v. Herndon*, 305 N.W.2d 917 (S.D.1981). We therefore reverse the trial court's award of rehabilitative alimony. We remand for reconsideration of a support award.

### II. PROPERTY DIVISION

As alimony and property division must be considered together, *Krage v. Krage*, 329 N.W.2d 878, 879 (S.D.1983), it is obvi-

ous that reconsideration of the property awarded to these parties is warranted, given our decision regarding rehabilitative alimony. However, the property division in this case is defective and self-contradictory in and of itself. Thus, it would require reversal even absent error regarding rehabilitative alimony.

■ It is the trial court's obligation to equitably divide property belonging to either or both of the parties, be the title in the name of the husband or the wife, having regard for equity and the circumstances of the parties. SDCL 25-4-44. Principal factors to be considered by the trial court in making such a division are: 1) The duration of the marriage; 2) the value of the property; 3) the ages of the parties; 4) their competence to earn a living; 5) the contribution of each party to accumulation of property; and 6) the income-producing capacity of the parties' assets. *Cooper v. Cooper*, 299 N.W.2d 798, 799–800 (S.D. 1980); *Wallahan v. Wallahan*, 284 N.W.2d 21, 24 (S.D.1979). This Court has consistently acknowledged that the performance by a housewife and mother of typically domestic duties constitutes a valuable contribution to the accumulation of marital property. *Garnos v. Garnos*, 376 N.W.2d 571, 573 (S.D.1985). However, the duration of this marriage was short, and most of the property the trial court determined to be marital property was accumulated before the marriage, by Larry. Here, the trial court awarded Patti Rae $25,000 in "permanent alimony," $7,500 for a car, $12,500 for a bracelet, approximately $4,000 in cash, furniture, and clothing.

Larry argues that this award is unjustified because 1) Patti Rae signed an antenuptial agreement waiving any claim to his property; 2) his net worth decreased by at least $1,000,000 during the marriage, so no property was accumulated; 3) the trial court made no specific finding of what marital property actually accumulated; and 4) requiring Larry to repurchase a bracelet from Patti Rae was an abuse of discretion. Patti Rae argues that her award was too small.

■ Considering the antenuptial agreement first, we agree that the trial court erred in its resolution of this matter. The trial court regarded the agreement as inapplicable to a divorce action. We disagree. Paragraph 5 of the agreement provided that "[t]his contract limits the right of either party to participate in the estate of the other, whether the marriage relation is determined by death or legal proceedings." Divorce actions are legal proceedings. The provision, although artlessly worded, indicates that the agreement could apply in a divorce context. The trial court must determine on remand if the agreement is to be rejected on other grounds.

> [A]n antenuptial agreement will be held valid if the prospective spouse can be said to have had adequate knowledge of the nature and extent of the other party's property, either as a result of disclosure by the other party or through the independent knowledge, however acquired, of the prospective spouse, or if the prospective spouse has been adequately provided for by the agreement.

*Schutterle v. Schutterle*, 260 N.W.2d 341, 348 (S.D.1977). Testimony in this case regarding the circumstances under which the antenuptial agreement was executed was contradictory, accompanied by accusations of nondisclosure of assets. Validity of an antenuptial agreement is to be decided on the basis of the facts of each case. *Schutterle, id.* The decision below did not reach the real questions about this antenuptial agreement. On remand, the trial court must reconsider the evidence, and, if the court deems it necessary, take new evidence. We appreciate the difficulty reconsideration will present for the trial court, as the judge who originally heard this case is now retired.

■ Larry's second and third arguments dovetail into Patti Rae's assertion that the property division defies the evidence in this case. She requests an award of one-third of all the property. Such a request is excessive on these facts. As Patti Rae observes, however, the trial court's findings of fact state that Patti Rae's contribution amounted to ten percent of property accumulated during the marriage. There

is no indication what property she contributed to, unless the court was referring to the marital property, totaling $2,295,311, of both parties as a whole. Ten percent of this amount is $229,531, which is excessive if it represents the trial court's calculation of Patti Rae's contribution because most of the property was acquired before marriage. Patti Rae emphasizes that she received approximately $55,000 in property and permanent alimony. Excluding the "permanent alimony" award, she received approximately $30,000 in property. This amount has no relation to ten percent of anything. Further clear error is reflected in the trial court's simultaneous inclusion and exclusion of a $46,000 home value in Findings of Fact Nos. XVIII and XX. As in *Wilson, supra,* the errors in this property division prevent meaningful review of its equity.

As for Larry's argument that he was entitled to the bracelet outright, we note the decision of *Olson v. Olson,* 278 S.C. 258, 294 S.E.2d 425 (1982), where uninsured jewelry worn at a wife's pleasure was held to be a gift to the wife. *Olson* also held that such gifts are subject to equitable distribution, which fits this case exactly. Larry claimed to have paid $12,500 for the bracelet, though it was appraised at $24,000. His claim that it was an investment fails under *Olson,* yet he received it back, for about half the appraised value. The trial court, in effect, equitably divided the bracelet between the two parties. On remand, the bracelet must be considered, however, as part of the entire property package.

Regarding valuation of individual property items, we determine that the trial court's findings were not clearly erroneous. These valuations were within the ranges of numbers provided to the trial court by the parties. The parties' experts differed radically in their estimates, and Larry's testimony was inconsistent and, at times, incredible. Much of his "loss" was merely depreciation.[2] The "book values" he uses in his arguments have nothing to do with

fair market value, as his own accountant testified.

Given the degree of error manifested in this property division, we reverse and remand for reconsideration of all aspects of the property division except valuations placed upon the individual assets. The trial court's decision is, in many respects, indecipherable, with language implying an excessive division in Patti Rae's favor, yet the property actually awarded unto her was minimal when contrasted to the trial court's language. We therefore conclude that the property award was an abuse of discretion. *Prentice v. Prentice,* 322 N.W.2d 880 (S.D.1982). We fully appreciate that the trial court must inceptually make a determination on the propriety of the antenuptial agreement. We further hold that findings of fact and conclusions of law must be entered in such decision.

### III. ATTORNEY'S, APPRAISER'S, AND ACCOUNTANT'S FEES

Finally, we address the last area of dispute: The trial court's award to Patti Rae of various fees incurred in this litigation. SDCL 25–4–38 provides that the court, in its discretion, may "require one spouse to pay as alimony any money necessary to support the other spouse ... or to prosecute or defend the action." The award of appraiser's and accountant's fees were, pursuant thereto, left to the trial court's discretion. Similarly, the trial court may, at its discretion, allow attorney's fees in divorce cases. SDCL 15–17–7.

Award of attorney's fees under SDCL 15–17–7 is a two-step process in that the trial court must determine what constitutes a reasonable fee in the case, then make the further decision of that portion of a party's attorney fees which should be allowed as costs and paid by the other party. *Lien v. Lien,* 278 N.W.2d 436, 443 (S.D.1979). *See also Wallahan v. Wallahan,* 284 N.W.2d 21, 27–28 (S.D.1979). In making its award, if any, the trial court should consider the following factors: The property owned by each party; their rela-

---

**2.** Example: According to Larry's accountant, a 1985 car owned by Larry's company would be worth nothing after three years, as it depreciated on a three-year schedule.

tive incomes; liquidity of the parties' assets; and whether a party has unreasonably increased the time spent on the case. *Johnson v. Johnson*, 300 N.W.2d 865, 870 (S.D.1980); *Wallahan*, 284 N.W.2d at 28. Additional factors to be considered are: The intricacy and importance of the litigation; labor and time involved; the skill required to draw the pleadings; discovery procedures utilized; existence of complicated legal problems; the time required to try the case; whether written briefs were required; and whether an appeal to the Supreme Court is involved. *Garnos v. Garnos*, 376 N.W.2d 571, 575 (S.D.1985) (citing *Holforty v. Holforty*, 272 N.W.2d 810 (S.D. 1978)).

As indicated by *Lien* and its progeny, the property held by the parties is an essential consideration in awarding attorney's fees. As we are remanding this case for inconsistencies in the property award, we determine that the trial court must likewise reconsider the attorney's fees and other fees awarded in this case. In addition, we note that the trial court's finding of fact regarding fees (No. XXVI) is clearly erroneous. The trial court's findings indicate that Patti Rae's request was for $12,480 in attorney's fees, appraiser's fees of $9,690 in addition to a retainer already paid, and additional accountant's fees of $2,150. The trial court found these fees to be reasonable, yet awarded Patti Rae only $6,500 of her requested attorney's fees, $4,000 in additional appraiser's fees, and no additional accountant's fees. Patti Rae, according to the exhibits at trial, actually requested $19,256 in attorney's fees. She submitted written objections to the erroneous finding, to no avail. Given Patti Rae's limited assets under the trial court's property division scheme, the extensive litigation involved,[3] and Larry's possession of all income-producing property, such inconsistent treatment of her claims was an abuse of discretion under *Lien* and *Garnos*. We reject Larry's arguments that the fees awarded were too generous and direct the second trial court to reaward reasonable fees. These would include any legal proceedings hereafter held in the trial court.

Patti Rae has submitted a motion for appellate attorney's fees, supported by an itemized statement of services performed and costs. *See Cole v. Cole*, 384 N.W.2d 312, 317–18 (S.D.1986); *Malcolm v. Malcolm*, 365 N.W.2d 863, 866 (S.D.1985). We determine that $3,000 is a reasonable amount of attorney's fees for this appeal, and, considering the relative positions of the parties, allow her that amount.

MORGAN and MILLER, JJ., concur.

SABERS, J., specially concurs.

WUEST, C.J., concurs in part and dissents in part.

SABERS, Justice (specially concurring).

Although I agree with the majority's disposition of Issues II and III, I cannot agree that the trial court's alimony award constituted an abuse of discretion. Under these circumstances, $625 per month for 48 months does not constitute an abuse of discretion. *Gibson v. Gibson*, 437 N.W.2d 170 (S.D.1989); *Tate v. Tate*, 394 N.W.2d 309 (S.D.1986); *Temple v. Temple*, 365 N.W.2d 561 (S.D.1985). This is so whether the name placed on the award is support, alimony or rehabilitative alimony. *Hautala v. Hautala*, 417 N.W.2d 879 (S.D.1988).

WUEST, Chief Justice (concurring in part and dissenting in part).

I concur with the majority's disposition of Issues II and III. I do not agree that the trial court's alimony award constituted an abuse of discretion. *See Gibson v. Gibson*, 437 N.W.2d 170 (S.D.1989); *Hautala v. Hautala*, 417 N.W.2d 879 (S.D.1988); *Tate v. Tate*, 394 N.W.2d 309 (S.D.1986); *Temple v. Temple*, 365 N.W.2d 561 (S.D. 1985).

---

**3.** Four days of trial took place over a six-month period; there were additional motion hearings; the record below is voluminous and fills a large box, with many exhibits. Surely, the litigation was arduous and involved a great amount of personal and real property, with an overlay of high emotions.