Darlene L. KAPPENMANN,
Plaintiff and Appellee,

v.

Larry J. KAPPENMANN, Defendant
and Appellant.

Nos. 17276, 17288.

Supreme Court of South Dakota.

Considered on Briefs May 20, 1991.

Decided Jan. 8, 1992.

Richard A. Johnson, Pruitt, Matthews, Muilenburg, Sioux Falls, for plaintiff and appellee.

Thomas K. Wilka, Hagen & Wilka, P.C., Sioux Falls, for defendant and appellant.

GROSSHANS, Circuit Judge.

Larry Kappenman (Larry) appeals provisions of a divorce decree relating to child custody, alimony and an award of partial attorney fees. Darlene Kappenman (Darlene), by filing a notice of review, appeals from certain provisions of the property distribution and the trial court's failure to award her permanent alimony and all of her attorney fees. We affirm on all issues.

## FACTS

Larry is 41 years old and Darlene is 43. They were married 20 years ago, at Montrose, South Dakota. Darlene graduated from the University of South Dakota in 1970 with a four-year secretarial degree. In 1971, Larry graduated from the University of South Dakota with a two-year nursing degree. Larry later attended Creighton University and obtained an anesthesia certificate. He is employed as a nurse anesthetist and earns in excess of $68,000 per year. Darlene worked in a variety of bookkeeping and secretarial positions until she gave birth to their first children, twins, in 1980. Her employment was interrupted from time to time as Larry pursued his professional career. Eventually he secured employment at Sioux Valley Hospital in Sioux Falls where they have lived for many years. They have three children. The twins, Brad and Todd, are now almost eleven, and their daughter, Leslie, is almost eight.

Darlene suffered some hearing loss as a result of childhood meningitis. She lost all ability to hear during her pregnancy with the twins. As a result, she receives social security disability benefits of about $390 per month for herself, and $180 per month for the children. Since the birth of the twins and her total hearing loss, she has devoted her time to being a full-time wife and mother. Despite Larry's encouragement, she has not learned sign language. Although she is a good lip reader, there is guesswork involved. According to Larry, she isolates herself and does not easily make friends. Dr. Bill Arbes, a clinical psychologist, testified that it is necessary for Darlene to participate in some deaf education classes and get involved with the Woman's Center so she can pursue career goals for herself.

At the time of the marriage neither party had significant assets. During the course of the marriage, they accumulated assets having a value in excess of $500,000. This includes four tracts of farmland which Larry farmed, various investment accounts and personal property including farm machinery. Except for a mortgage on some of the farmland, they are almost debt free. Larry is presently vested in a retirement plan at the hospital which will bring him about $451 per month at his normal retirement date in the year 2015. There is no evidence of the present cash value of this asset.

Larry and Darlene were involved in an automobile accident in 1987. Apparently she was the more severely injured of the two. They both have potential claims pending. It appears that Darlene has rejected a $10,000 offer of settlement. There is no other evidence of the value of these pending claims. Darlene and Larry were granted a divorce in 1989.

Custody of the children was the focal point of what the trial court termed a most "acrimonious dispute." It would serve no

constructive purpose to set forth at length the petty bickering and fighting these parties engaged in during the pendency of the proceedings concerning their children. The trial court concluded that each party was entitled to a divorce on the grounds of extreme mental cruelty, with Larry being more at fault than Darlene. The court followed the recommendations of two experts and determined that custody of the children would be joint with Darlene the primary custodian. Larry was given liberal and specific visitation rights.

In its property distribution the court awarded Larry his retirement account and Darlene her personal injury claim. Darlene received additional assets valued at $226,000. Larry received assets worth $276,000. During the pendency of the action, Darlene established a checking account in which she deposited her social security checks and interim child support. The trial court considered this account a marital asset and awarded it to Larry.

Darlene sought permanent alimony of $700 to $1000 per month. Larry contended that she should receive nothing due to the fact she received assets worth $226,000. The trial court rejected both positions and awarded Darlene rehabilitational alimony of $500 per month for five years.

Darlene sought recovery of all of her costs, including attorney fees and appraisal fees. Out of those total costs she was awarded $2500.

## ISSUES

### By Appellant, Larry:

1. Does the trial court's award of actual physical custody of the children to Darlene constitute an abuse of discretion?

2. Does the trial court's award of rehabilitation alimony of $500 per month for five years to Darlene constitute an abuse of discretion?

3. Does the trial court's award of partial attorney fees to Darlene constitute an abuse of discretion?

### By Appellee, Darlene:

1. Does the trial court's refusal to award permanent alimony to Darlene constitute an abuse of discretion?

2. Did the trial court's refusal to award Darlene an interest in Larry's retirement account and failure to consider his personal injury claim constitute an abuse of discretion?

3. Did the trial court's refusal to award Darlene all of her costs, including appraisal fees constitute an abuse of discretion?

4. Did the trial court's award of $50,000 more of the assets including Darlene's post-separation checking account to Larry constitute an abuse of discretion?

## DECISION:

All of the issues presented by the parties are subject to the abuse of discretion standard. "The term, 'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Gross v. Gross*, 355 N.W.2d 4, 7 (S.D.1984).

## CHILD CUSTODY

The primary consideration in deciding the custody of a child is determining the best interests of the child. SDCL 30–27–19; *Nauman v. Nauman*, 445 N.W.2d 38 (S.D.1989). The trial court is vested with broad discretion in deciding questions of child custody and its decision will be reversed only upon a clear showing of an abuse of that discretion. *Madsen v. Madsen*, 456 N.W.2d 551 (S.D.1990). The trial court's decision, based on its first hand opportunity to gauge the credibility of the parties, must be given appropriate deference. *Saint–Pierre v. Saint–Pierre*, 357 N.W.2d 250 (S.D.1984).

Larry contends that the trial court did not expressly state in its findings of fact and conclusions of law that it would be in the best interests of the children to be in Darlene's custody. The trial court's memorandum decision was incorporated into its findings by reference. It is clear from the memorandum decision that the trial judge applied the proper standard. He based his

decision in part on the recommendations of the two experts who concluded that it would be in the best interests of the children if joint custody were granted with Darlene being the primary custodian. Dr. Arbes testified; Renae Turbak presented a home study report, which was the result of a pre-trial request originally made, and later objected to, by Larry. Such a request falls within the ambit of *Schmitz v. Schmitz,* 351 N.W.2d 143 (S.D.1984) and therefore was properly admitted into evidence over his objection. It cannot be said that the trial court's decision was clearly against reason and the evidence. Therefore, the trial court did not abuse its discretion.

## ALIMONY

■ Larry and Darlene both contend that the trial court abused its discretion in awarding Darlene rehabilitation alimony of $500 per month for five years. Larry contends she should get nothing because she received a large property settlement. Darlene contends she should have permanent alimony.

The factors set forth in *Ryken v. Ryken,* 440 N.W.2d 300 (S.D.1989) are to be considered by the trial court in making an award of alimony. *See also, Baltzer v. Baltzer,* 422 N.W.2d 584 (S.D.1988). The trial court evaluated those factors and went on to temper its award by referring to *Wallahan v. Wallahan,* 284 N.W.2d 21, 27 (S.D.1979): "alimony [should] not be denied merely because [spouses] may be able to obtain employment and support [themselves];" neither should alimony be allowed to spouses who are capable of employment so that they can sit by in idleness.

In this case, neither party presented evidence specifically directed at rehabilitation. Obviously then, there is no plan for rehabilitation on the record. The issue is, whether the record supports such an award. In *Hautala v. Hautala,* 417 N.W.2d 879 (S.D. 1988) this court maintained:

> [T]he issue is not the name placed on alimony, but whether the record supports the award.

This court has consistently held that rehabilitative alimony is proper where it is necessary 'to enable the supporting spouse to refresh or enhance the job skills he or she needs to earn a living.'

The purpose of rehabilitative alimony is to put a spouse in a position to upgrade his or her economic marketability. *Bradeen v. Bradeen,* 430 N.W.2d 87 (S.D.1988). During their marriage, Darlene supported the family by devoting her time to being a full-time wife and mother. In so doing, she did forego employment opportunities.

The trial court further found that although Darlene is deaf, she could be gainfully employed if she would pursue vocational rehabilitation. The trial court noted "[t]hat she is in need of alimony to assist her in achieving an ability to sustain herself and to improve and refresh her job skills based on her current physical condition."

In addition, the award is for five years, which is a relatively short period of time. Still, this should be sufficient to allow Darlene to deal with adapting her handicap to the work force, refreshing and improving her secretarial skills, and taking the necessary career steps to support herself. In light of her circumstances, this seems to be a reasonable period of time.

The next step in reviewing the alimony award is to consider whether the award will place an unreasonable burden on Larry. *See Bradeen,* 430 N.W.2d at 91–92 (Henderson, J., dissenting). In doing so we review the property division and the alimony award together. *Booth v. Booth,* 354 N.W.2d 924 (S.D.1984). Larry earns in excess of $68,000 per year, *exclusive* of his farm income. He received almost $50,000 more than Darlene in assets from the property distribution. The alimony award of $6,000 per year will reduce his taxable income.

It cannot be said that the trial court's rehabilitative alimony award which enables a deaf housewife assistance in reentering the job market after a ten year abstinence is against reason and the evidence.

■ Darlene contends, however, that she should have received $700 to $1000 per month permanent alimony. Consistent with the testimony of Larry and Dr. Arbes, the trial court found that she could be gainfully employed if she would pursue vocational rehabilitation. She has a four-year university secretarial degree and several years of work experience in an office setting. It goes against reason to permit Darlene to waste this asset and live off of Larry for the rest of her life. The trial court did not abuse its discretion in denying Darlene $700 to $1,000 per month permanent alimony.

## PROPERTY DISTRIBUTION

■ Darlene contends that the division of marital assets is inequitable. Larry was awarded $49,734.82 more in assets. Larry was awarded the balance of $3,816 in a checking account Darlene had established post-separation and prior to the trial. The trial court made no disposal of Larry's personal injury claim and determined that Darlene's personal injury claim was equal to Larry's vested interest in his retirement account.

■ Again, the trial court has broad discretion in dividing marital property and unless it clearly abuses its discretion, its judgment will not be set aside. *Henrichs v. Henrichs*, 426 N.W.2d 569 (S.D.1988). The trial court, however, needs to "consider equity and the circumstances of the parties when it divides marital property." *Id.* at 571. When making this determination, the trial court is not tied to any mathematical formula. *Saint-Pierre, supra.*

The trial court considered the property division factors as set forth in *Henrichs, supra,* being mindful that exactitude is not required in valuing the assets. *Hanks v. Hanks*, 296 N.W.2d 523 (S.D.1980). Since the trial court's memorandum decision demonstrates that it took into consideration these factors, it is unnecessary to reiterate each of them here. From the exhibit attached to the trial court's memorandum decision it is obvious that it took a balance sheet approach in awarding assets. The liquid assets and personal property were split almost evenly, with Larry receiving $1,734.83 more than Darlene. This difference is de minimus since personal property and liquid assets totaled $243,921.85. The checking account established prior to trial was properly included on the balance sheet with all of the other assets that were capable of being valued by the court. In the "cash assets" category established by the trial court on its balance sheet, Darlene received $76,542.11 while Larry received only $51,864.44 which included the balance in the checking account Darlene now complains of.

The difficulty arises when making a distribution of the four tracts of farmland. These assets have a combined value of $300,000. One of the farms carries a $42,000 mortgage. Darlene received the most valuable property, debt free, worth $105,000. This was the property most capable of being utilized by her. This farm has rented for $9,350 per year. The other farms are also income producing but they are either farmed by Larry or by his brother or by both of them. It would not make much sense to award her an interest in one of these farms when she and Larry obviously do not get along. Larry is capable of operating the other three farms and he should not be forced to sell one when it is not necessary. Larry's real estate award is worth $153,000 net after the mortgage. Darlene's property award is worth $105,000. This difference seems equitable under the circumstances considering that the real estate was farmed by Larry over the past decade while he also maintained full-time employment as a nurse anesthetist. The difference is further diluted when considering that he will be paying Darlene $30,000 over the next five years in rehabilitative alimony.

There was a suggestion on the trial record that Larry, as well as Darlene, has a potential personal injury claim arising out of the same auto accident. The evidence regarding Darlene's pending suit discloses only that she is requesting $75,000, and has rejected a $10,000 settlement offer. The trial court made no mention of Larry's potential claim in its property distribution.

From the testimony concerning this accident, it appears as though Larry's claim, if he has any, is truly nominal. Larry is vested in a pension plan at the hospital. His expected retirement date is 2015 A.D. when he should draw about $451 per month. There is no evidence as to the present cash value of this asset. There was little evidence before the trial court to show any disparity in the value of the assets. The trial court included both assets in the settlement and then determined that it would be equitable for Larry to keep his pension account and Darlene her personal injury claim. In reaching its determination, the trial court was mindful of *Henrichs, supra,* concerning personal injury claims and *Gibson v. Gibson,* 437 N.W.2d 170 (S.D.1989) relative to pension funds.

Darlene failed to meet her burden of proof and establish a value on Larry's personal injury claim and his pension fund. To do so would have been relatively simple. It is not the trial court's responsibility to do this for her. As this court stated in *Martin v. Martin,* 358 N.W.2d 793, 798 (S.D. 1984), "The trial court should not be expected to go on a treasure hunt of its own to try to ferret out evidence that it is the parties' duty to provide."

## COSTS AND ATTORNEY FEES

 Both parties contend that the trial court abused its discretion in awarding Darlene $2,500 in suit costs and attorney fees. The trial court's award of attorney fees is a matter that lies within its discretion and its decision in this case does not rise to an abuse of that discretion. *Johnson v. Johnson,* 471 N.W.2d 156 (S.D.1991). The trial court considered the factors in *Cole v. Cole,* 384 N.W.2d 312 (S.D.1986) and generally concluded that matters between the parties on this issue were about equal. It based its decision on Larry's substantial income, and the fact that he may have contributed to the necessity of Darlene incurring in excess of $6,000 attorney fees.

Darlene also submitted a motion for attorney fees and costs on bringing this appeal. These costs have been properly supported. *Malcolm v. Malcolm,* 365 N.W.2d 863 (S.D.1985). Her total fees and costs are $2,117.35. We award her $1,000 in appellate attorney fees plus her costs on appeal.

The judgment of the trial court is affirmed on all issues.

MILLER, C.J., and WUEST, J., concur.

HENDERSON, J., concurs in part, concurs in result in part and dissents in part.

SABERS, J., concurs in part and dissents in part.

GROSSHANS, Circuit Judge, for AMUNDSON, J., disqualified.

HENDERSON, Justice (concurring in part; concurring in result in part; dissenting in part).

### I.

I concur with the entirety of this opinion, with two exceptions.

### II.

I agree with the rehabilitative award. Mother has a serious physical impairment. Having lost *all* of her ability to hear when she was pregnant with twins, she needs rehabilitation. "The alimony award of $6,000.00 per year will reduce his taxable income." This is a quote from the majority opinion. In my opinion, such a statement is an improper criteria for an alimony award. It is unsupported by case law in this state. It implants a bookkeeping entry or accounting thesis into alimony awards. It is off the judicial wall. If this is good analysis, then any individual, man or woman, cannot validly contest an unjust award of rehabilitative alimony based upon inequity. It is a world away in thought from basic alimony law. It is, in effect, justifying an alimony award based upon a tax break. It is simply a false basis for an award of alimony. *See* factors in *Ryken v. Ryken,* 440 N.W.2d 300, 303 (S.D.1989), for both alimony awards and rehabilitative awards.

### III.

On attorney's fees, both at trial and appellate level, appellee possesses great liquidity; she has a plethora of assets to pay her own lawyers. With an award of $226,000.00 in debt-free assets, $500.00 per month in rehabilitative alimony for five years and $1,100.00 in child support, she has fared quite well in the court system. There appears to be no need to have an award of attorney's fees for her ex-husband to pay. She has the ability to pay and he ought not have to pay. Let us not flail the male because he exists and ended up being in a courtroom. No justification—no award. I dissent on this issue.

SABERS, Justice (concurring in part and dissenting in part).

I concur in all respects except that I am convinced that the trial court erred in failing to award permanent alimony of at least $500.00 per month as opposed to rehabilitative alimony for 5 years. As the majority opinion states:

Larry earns in excess of $68,000 per year, exclusive of his farm income. He received almost $50,000 more than Darlene in assets from the property distribution. The alimony award of $6,000 per year will reduce his taxable income.

It cannot be said that the trial court's rehabilitative alimony award which enables a deaf Housewife assistance in reentering the job market after a ten-year abstinence is against reason and the evidence.

It seems obvious to me that Darlene's medical condition [deafness] and 10 years absence from the work force will guarantee *such permanent disparity* in both earning ability and actual earnings that permanent alimony should have been awarded.\* SDCL 25-4-41. If future circumstances were to prove us wrong, the amount of alimony could be modified upon a showing of change of circumstances. *Id.* Therefore, I would reverse and remand to require permanent alimony.

---

\* *See, Johnson v. Johnson,* 471 N.W.2d 156, 165 (S.D.1991) (Sabers, J., concurring specially):

Finally, in my view, the award of alimony was wholly inadequate in amount and duration, especially considering wife's medical situation, her need for medical insurance and the permanent disparity in the earning ability of the two parties. *Stubbe v. Stubbe,* 376 N.W.2d 807, 808 (S.D.1985). *Id.*