2000 SD 54

**Todd H. ALBRECHT, Plaintiff and Appellee,**

v.

**Jill N. ALBRECHT, Defendant and Appellant.**

No. 21018.

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 2000.

Decided April 26, 2000.

Todd D. Wilkinson and Gary W. Schumacher of Wilkinson & Wilkinson, DeSmet, for plaintiff and appellee.

Richard J. Helsper and Victoria M. Duehr of Glover, Helsper & Rasmussen, P.C., Brookings, for defendant and appellant.

AMUNDSON, Justice.

[¶ 1.] Jill Albrecht (Jill) appealed the trial court's judgment and decree of divorce. We affirm in part, reverse and remand in part.

### FACTS

[¶ 2.] Todd Albrecht (Todd) and Jill began dating while Jill was attending college at the University of Minnesota in Crookston, Minnesota; Jill later transferred to North Dakota State University. Todd and Jill were married on November 5, 1988. At the time of his marriage, Todd was working for his parents' farming and

ranching corporation, H.T. Albrecht & Sons (Albrecht & Sons). In early 1990 or 1991, Todd terminated his employment with Albrecht & Sons to begin his own farming and ranching operation with Jill. Jill subsequently decided to postpone her education and be a co-producer with Todd on his new farming and ranching operation.

[¶ 3.] In 1991, Todd entered into a contract for deed to purchase a parcel of property called the "Kenny Albrecht property" from Kenneth and Beverly Albrecht. The contract was arranged and negotiated by Todd's father.[1] Only Todd was listed as a buyer and Jill's name was not mentioned on the contract or deeds. Jill raised concern about the absence of her name from the deeds and Todd assured her that the land was a marital asset. The down payment for the Kenny Albrecht property was paid by Albrecht & Sons. Under the contract for deed, annual payments of $10,254.32 were due on the property from 1991 to 1996. Todd and Jill earned the money to pay the annual payments by renting the property to Albrecht & Sons and performing services for Albrecht & Sons. Albrecht & Sons agreed to pay Todd and Jill $10,254.32 annually and the couple would then use this money to pay the annual payment under the contract for deed. The contract for deed was ultimately paid off in 1996. Between 1991 and 1996, Albrecht & Sons treated the $10,254.32 annual payment as a rent expense on its income tax return and Todd and Jill reported their payment as rental income on their joint income tax return.

[¶ 4.] On May 14, 1993, Todd and Jill entered into a contract for deed with Todd's parents, Henry and Leona Albrecht, to purchase a sixty acre parcel of property known as the "Marital Residence." Todd and Jill resided here throughout their marriage and expended considerable time and money in making major improvements to the property.

Todd and Jill made an initial $2,000 down payment on the house.

[¶ 5.] In 1995, Todd and Jill started a road maintenance business. As the success of the road maintenance business grew, the farming operation was reduced and the livestock were sold in the spring of 1997.

[¶ 6.] On December 31, 1997, Todd sued Jill for divorce. On March 2, 1999, the circuit court granted a divorce to Todd on the grounds of irreconcilable differences and to Jill on grounds of extreme cruelty and adultery. In the property division, the court determined that only $19,700 of the value of the Kenny Albrecht property was a marital asset; the appraised value of $89,000 less the contract for deed purchase price of $69,300. The court awarded the Marital Residence property, which was where Jill was residing and operating her own livestock operation, to Todd because it had "been in the family for years" and "because it would work for whatever operation [he has] now or will have in the future." Todd and Jill had another parcel of real property in Miner County that was considered "poor land" and was rented to others. The court awarded Jill the Miner County property.

[¶ 7.] Jill also requested an award of rehabilitative alimony. Jill argued to the court that she had postponed her schooling to be a co-operator of the farming and ranching operation. At the time of her divorce, Jill was working forty hours per week as a loan processor at First National Bank in Brookings, South Dakota and earning $8.75 per hour. Jill argued that without a college degree, she is not able to advance in her current position. Jill also argued to the court that she planned to return to school or start a Pregnant Mare Urine (PMU) operation if she were awarded the Marital Residence property. Jill also requested some of the farming and livestock equipment to use in her own livestock operation. Jill's request for rehabilitative alimony was denied and all of the farming and livestock equipment as-

1. Kenneth Albrecht is Todd's father's first cousin.

sets were awarded to Todd. Finally, the trial court required Todd to pay Jill $23,185 to equalize the marital property division between the parties.

[¶ 8.] Jill appeals, raising the following issues:

1. Whether the trial court erred in the property division.
2. Whether the trial court erred in denying Jill rehabilitative alimony.
3. Whether the trial court erred in refusing the filing of defendant's proposed findings of fact and conclusions of law.

## DECISION

[¶ 9.] **1. Whether the trial court erred in the property division.**

█ [¶ 10.] In reviewing the trial court's property division, our standard of review is abuse of discretion. *Priebe v. Priebe*, 1996 SD 136, ¶ 9, 556 N.W.2d 78, 80 (citing *Grode v. Grode*, 1996 SD 15, ¶ 6, 543 N.W.2d 795, 799; *Abrams v. Abrams*, 516 N.W.2d 348, 352 (S.D.1994); *Radigan v. Radigan*, 465 N.W.2d 483, 487 (S.D.1991); *Henrichs v. Henrichs*, 426 N.W.2d 569, 572 (S.D.1988)). To reverse under this standard, we must find that the trial court exercised discretion " 'to an end or purpose not justified by, and clearly against reason and evidence.' " *Id.* (quoting *Paradeis v. Paradeis*, 461 N.W.2d 135, 137 (S.D.1990) (quoting *Bradeen v. Bradeen*, 430 N.W.2d 87, 91 (S.D.1988))).

█ [¶ 11.] We have often noted that "[i]n making an equitable division of property, the trial court is not bound by any mathematical formula, but is to make an award on the basis of the material factors in the case, having due regard for equity and the circumstances of the parties." *Garnos v. Garnos*, 376 N.W.2d 571, 572–73 (S.D.1985). In making our review, "we do not determine whether we would have made an original like ruling, but whether a judicial mind, in view of the law and circumstances of the particular case, could

reasonably have reached such a conclusion." *Billion v. Billion*, 1996 SD 101, ¶ 14, 553 N.W.2d 226, 230 (citing *Nelson v. Nelson*, 454 N.W.2d 533 (S.D.1990)).

[¶ 12.] Jill attacks the property division for four reasons. We address each separately.

### Kenny Albrecht Property

[¶ 13.] The trial court found that Kenneth and Beverly Albrecht agreed to sell the Kenny Albrecht property to Todd on a contract for deed with a total purchase price of $69,300, with $23,300 down, and the balance to be paid in installments. The trial court also found that the terms of the contract for deed were entirely negotiated by Todd's father. Further, the trial court found that Todd's father arranged the payment of the down payment and categorized his payments to Todd for tax purposes as land rent and "the amount paid was grossly in excess of the going cash rent rate." The trial court ultimately held that "the usage and course of dealing between [Albrecht & Sons] and [Todd] ... indicated an arrangement other than a landlord/tenant arrangement and reflected the true intent of [Todd's] father, Henry Albrecht and [Todd], to gift the funds necessary for [Todd] to make Contract for Deed payments." The trial court held that the $69,300 purchase price is not marital property, but the increase in fair market value of $19,700 was marital property subject to division.

█ [¶ 14.] Jill contends that "[a]ll property of both parties is subject to an equitable division regardless of origin or title." Further, Jill claims that because the property was "clearly acquired during the marriage and [she] did contribute to the accumulation and maintenance of this property," the entire value of $89,000 should have been included as a marital asset. In support of her argument, Jill cites *Garnos*, 376 N.W.2d 571 and *Prentice v. Prentice*, 322 N.W.2d 880, 882 (S.D. 1982). Both cases cited by Jill involve a

dispute as to whether the wife made any contribution to the disputed property.[2] In the present case, the issue in question is not whether Jill substantially contributed to the Kenny Albrecht property; rather, whether the property was a gift to Todd and partially excludable from the property division. Todd argues that considerable and extensive testimony was offered at trial that "Todd got the [Kenny Albrecht] land free from his dad" and therefore, it is a gift and should not be included as a marital asset. A review of the record does not support this contention. Todd utilized the rent payments of $10,254.32 received from Albrecht & Sons to make his annual contract for deed payment of $10,254.32 to Kenny Albrecht. There were no documents drafted which described this transaction as a gift, nor was there a gift tax paid. In fact, Albrecht & Sons included its payment to Todd as a "rent expense" for a tax deduction on their income tax form. Further, Todd treated the payment as "rental income" on Todd and Jill's joint income tax return.

■ [¶ 15.] We have often stated that the essential elements of a gift are: intent, delivery, and acceptance. *Estate of Fiksdal*, 388 N.W.2d 133, 135 (S.D.1986) (citing *Owen v. Owen*, 351 N.W.2d 139 (S.D.1984); *Bunt v. Fairbanks*, 81 S.D. 255, 258, 134 N.W.2d 1, 2 (1965)). Further, "[t]he donor's intent must be shown in order to determine that a gift has been made." *Id.* The record does not establish a bona fide intent by Todd's father to make a gift of the Kenny Albrecht property. In fact, testimony during the divorce proceeding from Todd's father provides:

Q: (Wilkinson): Henry, why did you write the checks to Todd and write the checks to bill for those contract payments?

A: (Henry):*I continued to farm the land until the contract was paid off and it was for rent.* (Emphasis added).

Based upon the evidence and record here-

2. In *Garnos*, wife appealed the trial court's award of $25,000 in property to her when the husband and wife had a net worth of over $800,000. 376 N.W.2d at 573. In reviewing the assets, this Court noted that husband and wife had an ownership interest in 4,136.89 acres. Of these acres, 3,070.89 were acquired by husband by either inheritance or estate planning. The remaining land, which was purchased during the marriage, had a total value of $236,150. The trial court found that the "inherited real property was to be excluded from any consideration in the determination of the property division" and wife had made "little, if any, contribution towards the acquisition of the 1,066 acres purchased during the marriage." *Id.* In reversing the trial court's award, we noted that "[d]uring the fifteen year plus of marriage of the parties, [wife] contributed all of her teaching income to family expenses" and also performed all of the duties of a housewife and mother. *Id.* An award of $25,000 was "clearly inadequate and an abuse of discretion on the part of the trial court." *Id.*

In *Prentice*, wife appealed the trial court's failure to include their farm property, which had been deeded to husband during the marriage. 322 N.W.2d at 881. Husband's father (father) deeded the farm to husband and husband's sister for $10,000, payable at the rate of $1,000 per year, plus interest. Father testified that this was "not intended to be a gift of the land until his death." Despite this testimony, the trial court found that "[i]t appears that this land was either a gift from [husband's] father before the marriage and property which he brought into the marriage subject to the rights that [husband's] sister may have, or it is still property of [Father], subject to the rights of the two children." *Id.* at 882. The trial court disallowed the inclusion of the property in the property division. In reversing the trial court's decision, this Court held,

[w]hile we can appreciate the trial court's difficulty in making an equitable division of this property between [husband] and [wife], it is clear that [wife] and her husband, in addition to paying the balance due on the farm, improved the real property by drilling a well ..., constructing a pole barn ..., and improving the residence by approximately $5,000.... Moreover, [wife] helped on the farm after they took possession, worked as secretary, and conducted a plant business. Thus, [wife] contributed to the partial payment and the improvements upon this farm by her work and industry. Given these facts, we believe the trial court abused its discretion in failing to consider this farm property in making an equitable division.

*Id.*

in,[3] we find that the trial court's conclusion that the Kenny Albrecht land transaction constituted a gift was an abuse of discretion. Based on this record, the gift theory on this asset seems to have been birthed solely for the purposes of this divorce action.[4] Therefore, the full $89,000 value of this asset should have been included in the marital estate.

### Marital Residence

[¶ 16.] The trial court found that Todd and Jill, during the course of their marriage, entered into a contract for deed with Todd's parents to purchase a parcel of real property known as the Marital Residence. The purchase price for the property was $20,000. The trial court found this sum to be "significantly below the fair market value of the property." The court held that this property was a marital asset; however, because the property was owned by Todd's family for several generations, was part of Todd's family farming operation for many generations, had significant sentimental value to Todd and his family, and was further necessary for Todd's continued farming activities, the trial court

---

**3.** The testimony of Todd's mother regarding the gift was as follows:

Q: (Jill's Attorney): And I'm going to ask you your understanding of the ownership and the arrangements on that property with regard to the land that we are referring to as Kenny Albrecht. Was it your understanding that those quarters were being gifted to your two sons by you and your ex-husband?

A: (Leona): I don't feel gifted is the correct word.

Q: How would you define that arrangement?

A: That land came up for sale and my husband up until now had bought all land in joint tenancy for him and I. Our divorce was pending and so joint tenancy was not an option. I would not allow the three quarters to be bought and excluding me. But we did do the two quarters that way, putting the one in Bill's name, the one in Todd's name.

And *it was simply a ploy, partly in our own divorce and the way they set it up with the taxes, with him getting benefit of that [$]10,000, the boys paying the tax on that money, it was more of a ploy than it was anything else.* (Emphasis added.)

Q: Do you recall any specific conversations you and your ex-husband Henry Albrecht would have had in which the word gift was even used?

A: Never.

Q: Was it part of any estate plan?

A: We did no estate planning.

Q: Did you ever file a gift tax return for the value of those, the property?

A: Never.

Q: And explain your understanding of the arrangement for how payments, what payments you would make and how they would be reported?

A: Oh, as to the Kenny Albrecht land?

Q: Yes.

A: All right. He did make the $10,000 plus payment to the boys. He gave them that amount. They put that on their income tax as income. They complained, Bill in particular made quite a statement as to having to pay income tax on that money because it simply wasn't there for him, but he had to pay the income tax on it.

Q: And then you also declared the rental income as well?

A: Yes, yes.

Q: Do you recall any conversation or your understanding of how they determined the value of that rent?

A: No, it was just, there again, it was a ploy for tax purposes. I questioned the honesty of it in the tax, but it seemed to work for him.

**4.** In divorce proceedings, we have previously stated that if one comes into the proceeding and claims for the first time that a loan exists, he better bring proof of the loan's existence. *See Grode*, 1996 SD 15, ¶ 7, 543 N.W.2d at 800. In *Grode*, this Court found that loan was never mentioned before this divorce proceeding, no written documentation exists to support the claim of the existence of the alleged loan, no interest or principal payments were ever made, and the machinery and equipment were never treated as a loan, but was used for trade-ins and depreciation deductions on income tax returns. *Id.* Further, we found that the evidence did not support the existence of a bona fide loan. This Court refused to find a loan existed solely on the basis of the self-serving declarations by the husband and his father that a loan existed. Here, Todd is coming into this divorce proceeding and claiming for the first time that this was a gift. As we have said with loans, if one is claiming a gift, he better bring in some evidence to prove the existence of a gift.

awarded the property to Todd. The court further found that Jill had failed to provide a compelling reason why she should be awarded the property.

[¶ 17.] Jill argues that the trial court erred in awarding the property to Todd because she resided there for eleven years, made improvements to the value of the property by planting flower gardens, building fences, planting trees, and working in the shelterbelt, and maintained her own farm/ranch operation which included livestock and horses. Further, Jill argues that the court did not consider the facts and circumstances of the parties before making the award.

[¶ 18.] We have often stated that in making a property division, "the court shall have regard for equity and the circumstances of the parties." *Endres v. Endres*, 532 N.W.2d 65, 71 (S.D.1995). *See also Garnos*, 376 N.W.2d at 572-73 (stating that the trial court must divide the property based upon "the material factors in the case, having due regard for equity and the circumstances of the parties"). A review of the record shows that the trial court did analyze the circumstances of Todd and Jill with regard to the property and concluded that this asset should go to Todd. Again, the question is not what we would have done, but whether there was an abuse of discretion. We determine there was no abuse.

### Farm Assets

[¶ 19.] The trial court awarded all the farm assets and the road maintenance assets to Todd. Jill argues that the trial court erred in awarding Todd all of the farm and road maintenance assets because "[a]t the time of trial, ... [Jill] did have a farm/ranch operation in existence at the marital residence wherein [Jill] maintained [ten] cow/calf pairs and horses." Jill contends that to continue her operation, she requested the trial court to award her specific farm assets to allow her to continue her operation. Further, Jill claims that Todd had scaled back his own farming operation to concentrate on his road main-

tenance business, had access to other farm equipment, and did not have livestock.

[¶ 20.] As we previously noted, "the trial court shall have regard for equity and the circumstances of the parties." *Endres*, 532 N.W.2d at 71. In weighing the circumstances of the parties, the court found that Jill intended "to remain in her present position with the First National Bank of Brookings at least for the time being" and "will not have her earning capacity impaired as a result of the Court's award of property." The court ultimately found that Todd's "ability to operate a farming business and road maintenance business requires allocation of those assets to [Todd]." In light of our determination that the Kenny Albrecht property is to be valued at $89,000, the award of the Marital Residence and the farm assets to Todd and the cash award to Jill does not constitute an inequitable property division.

### Additional Prepaid Expenses

[¶ 21.] At the divorce proceeding, the trial court included "prepaid expenses and supplies of $11,368" to determine the net value of the road maintenance business. Jill claims that these prepaid expenses and supplies were identified on the January 15, 1998 financial statement as gas, fuel and oil. She argues that there was an additional prepaid expense of $6,465 from Lake Preston Coop for fertilizer which did not appear on the financial statement used by the trial court in determining the net value of Todd's road construction operation. The trial court found that "there was insufficient evidence presented to warrant the inclusion of an additional $6,465 as requested by [Jill]."

[¶ 22.] Jill argues that the trial court erred when it failed to include the $6,465 for prepaid fertilizer expenses as an asset of Todd's in the road maintenance operation. Jill claims that she "presented hard evidence to the trial court that there was an additional prepaid expense for fertilizer that had not been included anywhere on [Todd's] proposal."

[¶ 23.] The record reveals that contradicting evidence was presented at trial concerning what the $11,368 and $6,465 figures represented. We have often stated that "[t]he trial court is in the best position to assess the credibility of witnesses, weigh the conflicting evidence and observe the witnesses and the evidence first hand." *Geraets v. Halter*, 1999 SD 11, ¶ 18, 588 N.W.2d 231, 234 (citing *Cowan v. Mervin Mewes, Inc.*, 1996 SD 40, ¶ 15, 546 N.W.2d 104, 109; *In re Estate of Elliott*, 537 N.W.2d 660, 662 (S.D.1995)). The trial court weighed the testimony and evidence and found that Jill failed to provide sufficient proof that the extra $6,465 should be included. We find no abuse of discretion on this point.

[¶ 24.] **2. Whether the trial court erred in denying Jill rehabilitative alimony.**

[¶ 25.] The award of rehabilitative alimony is reviewed under the same abuse of discretion standard as an alimony award. *Urban v. Urban*, 1998 SD 29, ¶ 13, 576 N.W.2d 873, 876. We have often held that "[t]he factors to be considered in awarding alimony are: 1) The length of the marriage; 2) the respective earning capacity of the parties; 3) their respective financial conditions after the property division; 4) their respective age, health, and physical condition; 5) their station in life or social standing; and 6) the relative fault in the termination of the marriage." *Ryken v. Ryken*, 440 N.W.2d 300, 303 (S.D. 1989) (citing *Caughron v. Caughron*, 418 N.W.2d 791, 793 (S.D.1988); *Tesch v. Tesch*, 399 N.W.2d 880, 884 (S.D.1987)). In addition to the previous factors, the following additional factors must be considered in awarding rehabilitative alimony: 1) the supporting spouse's contributions; 2) foregone opportunities to enhance or improve professional or vocational skills; and 3) the duration of the marriage following completion of the non-supporting spouse's professional education. *See Parsons v. Parsons*, 490 N.W.2d 733, 735 (S.D. 1992). Rehabilitative alimony is " 'de-

signed to meet an educational need or plan of action whose existence finds some support in the record.' " *Urban*, 1998 SD 29, ¶ 13, 576 N.W.2d at 876–77 (quoting *Radigan*, 465 N.W.2d at 486 (citing *Ryken*, 440 N.W.2d at 303)). "Typically, rehabilitative alimony is awarded when there is testimony to show an educational need or a plan of action to meet that need." *Id.* (citing *Evans v. Evans*, 1997 SD 16, ¶ 35, 559 N.W.2d 240, 248–49).

[¶ 26.] The trial court found: Todd is thirty-four and Jill is thirty-one; both parties are in good health; Todd and Jill were married ten years; Todd is self-employed and has gross income of $4,160; Jill is employed as a mortgage loan processor earning $8.75 per hour and expecting annual income of $17,680; prior to the marriage, Jill had discontinued her attendance at college; during the marriage, Jill had several part-time jobs and periodically assisted the farming and road maintenance operations; and Jill's earning capacity has not been reduced and she will be substantially debt-free as a result of the property division. The trial court also found that Jill "requires no additional educational training or degree to perform her present jobs requirements and has the competency to earn a living." Further, the court held that Jill "did not forego education and employment opportunities during the marriage as her current employment demonstrates her ability to obtain employment." In rejecting Jill's request for rehabilitative alimony, the court held that Jill "has requested rehabilitative alimony but has not demonstrated her inability to obtain gainful employment, she is earning a wage within her station in life and has not demonstrated that additional training is required for her to become self sufficient when in fact her current employment demonstrates her self sufficiency."

[¶ 27.] An essential requirement of recovering rehabilitative alimony is that the requesting party must provide testimony of an educational need or plan of action.

*See, e.g., Urban,* 1998 SD 29, ¶ 13, 576 N.W.2d at 877 (allowing no rehabilitative alimony because wife "presented no evidence of any educational need or plan of action to support such an award"). A review of the record reflects that Jill's plans were speculative at best. She failed to establish that an educational need existed and that she had a meaningful plan to correct that need; therefore, the trial court did not abuse its discretion in denying rehabilitative alimony.

[¶ 28.] Both parties have requested appellate attorney fees. Based upon this decision, both requests are denied and each party is responsible for their own respective attorney fees.

[¶ 29.] We reverse and remand on the issue of valuation of the Kenny Albrecht property, with directions to include the full value of the Kenny Albrecht property in the marital estate. We affirm the judgment of the trial court regarding the Marital Residence, the farm assets, prepaid expenses, and rehabilitative alimony. We have considered issue three and find it to be unpersuasive.

[¶ 30.] MILLER, Chief Justice, and SABERS, KONENKAMP, and GILBERTSON, Justices, concur.